[995 NE2d 123, 972 NYS2d 161]

In the Matter of NORMAN E. ROTH et al., Appellants, v CITY OF
SYRACUSE et al., Respondents. (And Other Proceedings.)

Argued May 1, 2013; decided June 11, 2013

**POINTS OF COUNSEL**

*Hancock Estabrook, LLP*, Syracuse (*Alan J. Pierce* of counsel), for appellants. I. Petitioners established the requested reduction in value in the subject properties by the cost to cure the lead contamination at each parcel, and Supreme Court's conclusion

to the contrary is erroneous as a matter of law. (*Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon*, 88 NY2d 724; *Criscuola v Power Auth. of State of N.Y.*, 81 NY2d 649; *Matter of Bass v Tax Commn. of City of N.Y.*, 179 AD2d 387; *Matter of Northville Indus. Corp. v State of New York*, 14 AD3d 817; *Welch Foods v Town of Westfield*, 222 AD2d 1053; *Matter of Alexander's Dept. Store of Val. Stream v Board of Assessors*, 227 AD2d 549; *Matter of Northville Indus. Corp. v Board of Assessors of Town of Riverhead*, 143 AD2d 135; *Adams v Rizzo*, 13 Misc 3d 1235[A], 2006 NY Slip Op 52135[U]; *Juarez v Wavecrest Mgt. Team*, 88 NY2d 628; *Matter of New York City Coalition to End Lead Poisoning v Vallone*, 100 NY2d 337.) II. Even disregarding the lead paint contamination, petitioners established that each of the subject properties was over-assessed.

*D.J. & J.A. Cirando, Esqs.*, Syracuse (*John A. Cirando, Bradley E. Keem* and *Elizabeth deV. Moeller* of counsel), and *Mary Anne Doherty, Corporation Counsel* (*Shannon M. Jones* of counsel) for respondents. I. *Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon* (88 NY2d 724 [1996]) does not require a reduction of the tax assessments based on "cost to cure." (*Matter of Consolidated Edison Co. of N.Y., Inc. v City of New York*, 8 NY3d 591; *Matter of B. Altman & Co. v City of White Plains*, 57 NY2d 904; *Matter of City of Syracuse Indus. Dev. Agency [Alterm, Inc.]*, 20 AD3d 168; *Matter of Northville Indus. Corp. v State of New York*, 14 AD3d 817; *Matter of Bass v Tax Commn. of City of N.Y.*, 179 AD2d 387; *Matter of Northville Indus. Corp. v Board of Assessors of Town of Riverhead*, 143 AD2d 135; *Matter of Atkin v Board of Assessors of Town of Greece*, 19 Misc 3d 1125[A], 2007 NY Slip Op 52552[U]; *Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351; *Adams v Rizzo*, 13 Misc 3d 1235[A], 2006 NY Slip Op 52135[U].) II. The tax assessments, on the record, are not overvalued or incorrect. (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179; *Farash v Smith*, 59 NY2d 952; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176; *Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon*, 88 NY2d 724; *People ex rel. Claflin Co. v Feitner*, 58 App Div 468; *Matter of Villa Roma Country Club v Fulton*, 301 AD2d 911; *Rushford v Facteau*, 280 AD2d 787; *Thoreson v Penthouse Intl.*, 80 NY2d 490.)

*New York State Conference of Mayors and Municipal Officials*, Albany (*Jane E. Tsamardinos* of counsel), and *Association of Towns of the State of New York* (*Michael E. Kenneally, Jr.*, of

counsel) for New York State Conference of Mayors and Municipal Officials and another, amici curiae. I. This Court's decision in *Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon* (88 NY2d 724 [1996]) does not mandate an annual per se reduction in assessed valuation where lead paint is present. (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179; *People ex rel. Wallington Apts. v Miller*, 288 NY 31; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176.) II. *Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon* (88 NY2d 724 [1996]) does not require the immediate recognition of the full cost to remediate a property in each year that a land owner fails to remediate the environmental contamination. (*Chapman v Silber*, 97 NY2d 9.)

## OPINION OF THE COURT

RIVERA, J.

In this Real Property Tax Law article 7 proceeding challenging the tax assessments of certain residential properties located in Syracuse, New York, petitioner contends that the trial court erred by failing to consider the impact of contamination—specifically, lead paint—upon the market value of the properties. We hold that petitioner failed to rebut the presumption of validity that attaches to the tax assessments of the properties by the City of Syracuse. That is, petitioner failed to proffer substantial evidence demonstrating a diminution in market value to his properties caused by the mere presence of lead paint.

In this action, petitioner challenges the valuation by the City's Board of Assessment Review of five single-family, five-bedroom houses near Syracuse University used as rental housing for local college students. Petitioner commenced an RPTL article 7 proceeding to challenge the tax assessments of each property for the years 2001-2004, alleging that the City had overvalued the homes by a total of $825,000 over the four-year period. Specifically, petitioner alleges that the property valuations did not account for the adverse effect that the presence of lead paint would have upon market value.[1]

At the nonjury trial, on these consolidated proceedings, petitioner presented the expert testimony of G. Richard Kelley, a licensed real estate appraiser who concluded that the fair

---

1. Petitioner alleged in his complaints of asbestos contamination, but on this appeal, focuses on the negative impact of lead paint on the market values of the five properties.

market value of the properties had been negatively impacted by the presence of lead-based contaminants. Based upon an inspection of the properties, and pertinent income and expense data, Mr. Kelley adopted an income capitalization method that determines market value based upon a property's ability to generate income. Under this approach, Mr. Kelley first determined the hypothetical non-contaminated market values of the five properties. Mr. Kelley then relied upon the testimony of other witnesses, certified environmental testing companies and contractors hired by petitioner, who had examined the interiors, exteriors and soil of the five properties in 2008, and had positively confirmed the presence of lead-based contaminants. Those witnesses had proposed the approximate remediation and construction costs that would be incurred to remove the lead paint conditions from each property. Reducing the non-contaminated market values of the properties by their respective "cost to cure" figures, Mr. Kelley concluded that each of the five properties had a market value of $1 for each year from 2001-2004.[2] Petitioner, however, continues to profit from the rental income generated by the five properties. Further, the lead paint conditions have not been abated, and therefore, no remediation costs have been incurred.

The City's expert, William J. Kimball, a licensed real estate appraiser, determined the market value of the five properties using both a sales comparison approach and an income capitalization method. Under both methods, however, Mr. Kimball concluded that the mere presence of lead paint, without more, did not diminish the market value of the five properties. Local property owners and brokers indicated that lead-based paint would have no adverse effect upon either the sales of the properties or their continued profitable use as student rental housing. Furthermore, City witnesses testified that absent evidence of flaking, chipping or peeling paint, lead paint did not present a hazardous condition.

Supreme Court denied the petition. As an initial matter, the court struck Mr. Kimball's appraisal reports, and trial testimony

---

2. Mr. Kelley's calculations actually resulted in negative market values for each of the five properties because the "cost to cure" exceeded the market value of the properties in a non-contaminated state. Relying on the concept of residual value, Mr. Kelley consequently assigned each property a market value of $1 under the theory that a theoretical buyer would purchase property for $1.

pertaining to those reports, because he failed to include supporting documentation required under 22 NYCRR 202.59 (g) (2), namely, the income and expense statements for the properties for the years in question. Nevertheless, the trial court concluded that Mr. Kimball's testimony challenging petitioner's appraisal reports would stand. On the merits, Supreme Court held that "[p]etitioner ha[d] failed to meet its burden of proof that for any of the years in question the subject properties are overvalued or that the assessments are incorrect." The court rejected Mr. Kelley's appraisals, finding that the reports' use of income and expense figures was unreliable, as evidenced by "large variance[s] in year to year expenses" that "raises red flags." Thus, finding that petitioner's expert "lack[s] credibility for a number of reasons," Supreme Court determined that petitioner had failed to satisfy his burden to demonstrate that the City overvalued the properties for tax assessment purposes.[3]

The Appellate Division unanimously affirmed for the reasons stated in Supreme Court's decision (78 AD3d 1590 [4th Dept 2010]). This Court granted petitioner leave to appeal, pursuant to CPLR 5602 (a) (1) (ii), from a judgment (denominated order) of Supreme Court that granted petitioner's motion to voluntarily discontinue its remaining claims with respect to other properties in these RPTL article 7 proceedings, bringing up for our review the prior nonfinal Appellate Division order (19 NY3d 806 [2012]). We now affirm.

It is well settled that property "[a]ssessments shall in no case exceed full value" (NY Const, art XVI, § 2). The ultimate goal of property valuation in any tax proceeding "is to arrive at a fair and realistic value of the property involved" (*Matter of Great Atl. & Pac. Tea Co. v Kiernan*, 42 NY2d 236, 242 [1977]) so that "all property owners contribute equitably to the public fisc" (*Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356 [1992]).

---

**3.** The parties contest whether lead-based contaminants were present in the five properties for tax years 2001-2004. Given that the presence of lead was common until 1970 when the use of lead paint was declared unlawful (*see* Public Health Law § 1372), petitioner contends that the positive confirmation of lead in 2008 permits the reasonable inference that the lead paint conditions existed from 2001-2004. Supreme Court drew a positive inference of the existence of lead paint, but concluded that absent evidence of flaking, chipping or peeling paint, "no such inference may be drawn as to the condition of the paint three to seven years earlier based upon the tests performed." For the purposes of this appeal, we assume that lead paint was present in the five properties for the subject four-year period.

In an RPTL article 7 proceeding, a rebuttable presumption of validity attaches to the valuation of property made by the taxing authority (*see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 188 [1998]). Thus, a petitioner challenging the accuracy of a tax valuation has the initial burden to rebut the presumption by introducing substantial evidence that the property was overvalued (*see Matter of Bass v Tax Commn. of City of N.Y.*, 179 AD2d 387, 387 [1st Dept 1992] ["The presumption of validity of an assessment by the taxing authority is rebutted where, as here, credible evidence to the contrary is received"]; *Matter of FMC Corp.*, 92 NY2d at 188 [a "petitioner (must) demonstrate the existence of a valid and credible dispute regarding valuation"]; *see also Matter of Alexander's Dept. Store of Val. Stream v Board of Assessors*, 227 AD2d 549, 550 [2d Dept 1996] ["The burden of proof is upon the taxpayer to establish, by substantial evidence, that the property was overvalued for taxation purposes"]). Only where the petitioner meets this burden and rebuts the presumption must the court "weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner has established by a preponderance of the evidence that its property has been overvalued" (*Matter of FMC Corp.*, 92 NY2d at 188).

Here, petitioner failed to proffer substantial evidence demonstrating that the presence of lead paint resulted in a diminution or devaluation in the market value of the five properties for the tax years 2001-2004. Relying primarily upon *Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon* (88 NY2d 724 [1996]), petitioner argues that the presence of lead paint and the attendant costs to cure lead-based contaminants should be factored because "the assessment of property value for tax purposes must take into account any factor affecting a property's marketability" (*id.* at 729). In *Commerce Holding*, the taxpayer, Commerce Holding Corp., owned a parcel of land marred by severe subsurface environmental contamination caused by toxic leakage from industrial metal plating operations that occurred on the premises. As a result of the contamination, the property was designated a Superfund site pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), making Commerce Holding strictly liable for cleanup costs (*see id.* at 727-728). Consequently, Commerce Holding contended that the tax assessors "should have reduced the assessed property value to account for environmental contamination" (*id.* at 728). We agreed, remarking that to the extent it impairs market value, "contamination

must be considered in property tax assessment" (*id.* at 729). However, we also made clear that the effect of environmental contamination or hazards should be considered only if the "environmental contamination is shown to depress a property's value" (*id.* at 729; *see also Criscuola v Power Auth. of State of N.Y.,* 81 NY2d 649, 652 [1993]). Here, notwithstanding the alleged presence of lead paint during the tax years 2001-2004, the five properties continued to generate rental income for petitioner, and he did not otherwise demonstrate that the presence of lead-based contaminants depressed the market value of the five properties.[4] This is unsurprising, as petitioner did not discover the lead contamination until 2008, so neither he nor his renters were aware of any lead-based contaminants on the properties during the relevant period.

 The fact that Supreme Court struck the City's appraisal reports because of a procedural deficiency does not, contrary to petitioner's argument, require a finding in his favor. Petitioner bears the ultimate burden to rebut the presumption of validity accorded to the tax assessments issued by the City. To carry his burden, petitioner must show that the market value of the properties was diminished by the presence of lead paint, not its mere existence. To hold otherwise would permit a taxpayer to avoid his or her fair share of the tax burden, while, as in petitioner's case, reaping the benefits of a rental market that is unaffected by the presence of the contaminant without having incurred any costs to remediate or abate the lead-based conditions.

---

4.  The nature of the contamination and market factors in this case further distinguish petitioner from the property owner in *Commerce Holding.* The property in *Commerce Holding* was a designated Superfund site, and the property owner was strictly liable pursuant to CERCLA and a consent order with the Environmental Protection Agency to remediate the site (*see* 88 NY2d at 728). Thus, we concluded that "cleanup costs are an acceptable, if imperfect, surrogate to quantify the environmental damage and provide a sound measure of the reduced amount a buyer would be willing to pay for the contaminated property" (*id.* at 732). Here, in contrast, there was no evidence that "a buyer of the property would have demanded an abatement in the purchase price to account for the contamination" (*id.* at 730). Petitioner admits there was no immediate legal requirement to abate the lead paint from the properties, and the ubiquitous nature of lead paint in residential properties, unlike the unique contamination of the Superfund site in *Commerce Holding,* undermines petitioner's unsupported contention that there is a lead paint "stigma" depressing market value. Thus, petitioner's proposed remediation costs are not an appropriate factor to be considered in evaluating the tax assessments of these properties.

Where the trial court declined to credit petitioner's appraisal reports, and the record does not demonstrate a diminution in market value caused by environmental contamination or hazards, petitioner failed to meet his burden and there is no basis to disturb the presumption of validity in the City's favor.

Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and PIGOTT concur; Judge ABDUS-SALAAM taking no part.

Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.